```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
FRANK ARCHBALD,

                Plaintiff,

    -against-                              MEMORANDUM AND ORDER
                                           14-CV-07569 (FB)
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
---------------------------------------------------x
```

*Appearances:*
*For the Plaintiff:*                        *For the Defendant:*
CHRISTOPHER J. BOWES, ESQ.                  KELLY T. CURIE, ESQ.
54 Cobblestone Drive                        Acting United States Attorney
Shoreham, New York 11786                    MATTHEW SILVERMAN, ESQ.
                                            Assistant United States Attorney
                                            Eastern District of New York
                                            271 Cadman Plaza East
                                            Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

Frank Archbald ("Archbald") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits under the Social Security Act. Both parties move for judgment on the pleadings. The ALJ deprived Archbald of a fair and adequate hearing. Archbald's motion is granted insofar as the case is remanded for further proceedings. The Commissioner's motion is denied.

# I.

On February 1, 2013, Archbald filed an application for Disability Insurance Benefits. Archbald alleged disability as of August 3, 2009, from knee and back pains, post-traumatic stress disorder ("PTSD"), asthma, anxiety, difficulty sleeping, and substance abuse. After the Social Security Administration denied his application, Archbald requested a hearing before an Administrative Law Judge ("ALJ"), who also denied him benefits.

42 U.S.C. §§ 423(a)(1)(A), (c) require sufficient quarters of insurance coverage to obtain social security benefits. *See Vitale v. Apfel*, 49 F.Supp.2d 137, 142 (E.D.N.Y. 1999). [1] Archbald contends that the ALJ failed in his duty to fully develop the record and determine that he was disabled prior to the termination of insurance benefits. He argues that, viewed as a whole, the record contains evidence his current disability occurred prior to 2011.

***Medical Evidence Prior to June 30, 2011***

Archbald served in the Army from 2000 - 2008, including a period in Afghanistan during Operation Enduring Freedom. He was honorably discharged from active duty in 2003 but continued in the service for another five years. He has since faced difficulty obtaining employment, attributing this to PTSD, as well as service-

---

[1] Archbald's records show sufficient coverage to remain insured through June 30, 2011.

related knee and back injuries. He repeatedly sought treatment at the New York Veteran's Administration hospital (the "VA") in Brooklyn, but his last date of insurance coverage was June 30, 2011.

While insured, he sought medical treatment in 2005, 2009, and 2010. In 2005, he sought treatment for depression and anxiety at the VA, while also acknowledging knee problems. The treating physician diagnosed mood disorder and substance abuse, and recommended psychiatric outpatient treatment. At the time, he had a global assessment function[2] ("GAF") of 75. He received treatment for pneumonia in 2009, and an X-ray indicated mild degenerative changes in his thoracic spine. The following year, he went to the VA hospital for gastroenteritis.

*Medical Records post June 30, 2011*

In August and October 2012, he sought treatment for knee and back pains. He was also screened for depression and PTSD, results for which were negative, but received mental health treatment for an unspecified adjustment reaction condition.

In May 2013, he again complained of extreme back and knee pain. Additionally, he was referred to the mental health clinic for evaluation of military-related anxiety.

---

[2] GAF is a tool used by mental health experts to judge overall levels of functioning and is used for tracking clinical progress. A score of 71-80 is used where symptoms, if present, are transient and expectable reactions to psychosocial stressors. Diagnostic Statistical Manual of Mental Disorders, 4th ed., American Psychiatric Association (2000), pp. 32-34 ("DSM-IV"). Notably, the GAF is not standardized, nor is it routinely applied. It has been dropped from the recently issued DSM-V.

Medical reports noted an incident during which Archbald blacked out and went into "war mode" because a friend was arrested. He did not recall the incident but reported using marijuana and alcohol to ease those anxiety-ridden moments. The social worker and treating doctor both performed GAF evaluations and found his score to be 45 and 55, respectively.[3]

Archbald lapsed in treatment but, in October 2013, underwent inpatient treatment at the VA following a series of "blackouts." He received a principle diagnosis of PTSD and received another GAF test, scoring at 45.

*ALJ Hearings*

Archbald appeared twice, *pro se*, for hearings on August 22, 2013 and February 3, 2014. At the first hearing, the ALJ explained the benefits of representation, but accepted Archbald's assertion that he wanted to proceed *pro se*. After clarifying Archbald's allegations, the ALJ adjourned the hearing to collect medical documents to develop the record and to send Archbald to two consultative examiners, "an orthopedist, and...a psychiatrist." AR 62.[4] The hearing lasted no more than five minutes.

---

[3] A GAF score in the range of 51-60 means "moderate" symptoms or moderate difficulties in social, occupational, or school functioning. DSM-IV, 23-24. A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *Id.* at 32-34.

[4] All references to "AR" refer to the administrative record.

4

Proceeding with the February hearing, the ALJ questioned Archbald about his alleged impairments, his time in the military, and his daily activities. Additionally, he inquired about Archbald's medications and social interactions. A vocational expert (the "VE"), having heard Archbald's responses, opined on the type of work available for a hypothetical individual with limitations similar to Archbald's.[5] The VE determined that Archbald could work as a linen room attendant, laundry worker, or hospital food-service worker. The ALJ then explained that his job was to determine whether Archbald was able to perform substantial gainful activity, despite impairment.

At no point did the ALJ inquire about the consultative examinations. Regardless, though the ALJ scheduled two appointments for him– both with an orthopedic doctor– Archbald never went. The hearing ended after approximately 25 minutes.

*ALJ's Decision*

In a written decision issued on February 12, 2014, the ALJ concluded that though

---

[5] The ALJ found that Archbald had the residual functional capacity ("RFC") to perform medium work with the following restrictions:
    (i) frequently climb ramps, stairs, ladders, ropes or scaffolds;

    (ii) frequently stoop, and occasionally kneel, crouch, or crawl;

    (iii) limited to performing simple and routine tasks, while permitted to be off task 5% of the workday in addition to regular breaks; and

    (iv) limited to only occasional interaction with the public and co-workers.

he had severe impairments, Archbald was not disabled. The ALJ remarked that Archbald's medical records contained little documentation of regular treatment for any alleged impairments and found his psychiatric treatment "unremarkable for significant, consistent treatment." AR 32. Moreover, the ALJ noted, as significant, Archbald's failure to attend the scheduled consultative examination.

The ALJ ruled that Archbald was unable to perform his past relevant work as either a general field artillery crew member or medical service technician, but was able to perform other work that exists in significant numbers in the national economy.

The Appeals Council subsequently denied Archbald's request for review, rendering final the Commissioner's decision. Archbald timely sought judicial review.

## II.

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart,* 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).

Archbald argues that the ALJ denied him a fair and adequate hearing because he did not adequately develop the record and unreasonably discredited his credibilty because he failed to seek treatment.

6

**Fair and Adequate Hearing**

While a claimant bears the burden of proving disability, 42 U.S.C. § 1382c(a)(3)(B), the ALJ has a duty to develop a full and fair record. *See Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982). This duty is enhanced when a claimant appears without counsel. Then, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 509 (2d Cir. 2009) (*citing Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980)) (internal citations omitted). The reviewing court must ensure that "all of the relevant facts [are] sufficiently developed and considered." *Id.* at 895. Gaps in the record can be sufficient evidence that the ALJ has failed his duty. *See Echevarria*, 685 F.2d at 755; *Hankerson*, 636 F.2d at 895 (finding error because "the record is replete with instances where the ALJ should have questioned plaintiff more fully concerning various aspects of his testimony.")

The ALJ is required to supplement the record by asking detailed questions, ordering additional examinations, and contacting treating medical sources for additional records and information. *See Rivera v. Barnhart*, 379 F.Supp.2d 599, 606 (S.D.N.Y. 2005). Here, the ALJ did not fully evaluate Archbald's subjective complaints regarding his PTSD or his knee and back pains. The ALJ missed his opportunity in the brief hearing[6] to fully develop the record regarding the functional effects and nonexertional

---

[6] The combined transcripts of the two hearings were a total 23 pages long; the transcript for the first hearing was 6 pages, the second hearing was 17 pages.

limitations of Archbald's impairment. *See*, *e.g.*, *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (a short record "revealed a host of lost opportunities to explore the facts"); *Hankerson*, 912 F.2d at 894 (finding "quite brief" a sixteen page transcript); *Rivera*, 379 F.Supp.2d at 606 (ALJ missed opportunity to develop the record "in the meager eighteen page hearing transcript"). Furthermore,

The ALJ should have inquired about Archbald's anxiety-related blackouts as well as his knee injuries, and whether they were consistent with medical evidence, especially since Archbald has severe impairments. *See* 20 C.F.R. §§ 404.1529(a), (c)(3) (describing how an ALJ evaluates symptoms of disability). Moreover, the ALJ should have considered the total limiting effects of Archbald's impairments in order to determine his ability to perform substantial gainful activity. 20 C.F.R. § 404.1545(e). The scant 25 minute record hardly afforded the ALJ a meaningful opportunity to determine an adequate RFC.

Second, the ALJ should have followed up on his request to have Archbald see two consultative physicians. His attempt to deflect this error and instead discredit Archbald's credibility is flawed. The ALJ should have inquired into Archbald's absence. *See* Soc. Sec. Admin. Office of Hr'gs & Appeals, HALLEX, Hearings, Appeals and Lit. Law Manual, I-2-5-24 (October 2015) ("the ALJ will then use the general principles...to determine whether the claimant had good cause for not

attending" the consultative exam).[7] Moreover, he did not request a consultative psychiatric evaluation, which goes to the crux of Archbald's claim of PTSD. Clearly Archbald's blackouts and PTSD are significant. The ALJ had a duty to fully develop the extent of Archbald's psychiatric problems.

The ALJ also discredited Archbald's credibility because of a lapse in treatment. Though there is a gap in medical care between 2005 and 2013, failure to seek treatment is not a bar to disability. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("the ALJ must not draw any inferences about a claimant's condition from this failure to seek treatment unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (citing 20 C.F.R. § 1529(c)(1))). The ALJ never probed into why Archbald's medical history is sparse. Notably, his condition may be the very cause for the break in medical care; but the ALJ never inquired, despite medical records showing PTSD-related complaints in 2005.

### III.

For the foregoing reasons, Archbald's motion is granted insofar as the case is

---

[7] The HALLEX is not a legally binding manual, but serves as an advisory guide. *See Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir.2000) ("HALLEX is strictly an internal guidance tool, providing policy and other procedural guidelines to ALJs and other staff members. As such, it does not ... carry the force and effect of law."); *Rocchio v. Astrue*, 2010 WL 5563842, at *13 (S.D.N.Y. 2010) (same).

remanded for further proceedings, and the Commissioner's motion is denied.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
November 19, 2015